# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHARON K. BOESE,

    *Plaintiff,*

vs.

FORT HAYS STATE UNIVERSITY,

    *Defendant.*

Case No. 09-1262-EFM

## MEMORANDUM AND ORDER

Presently before the court is Defendant Fort Hays State University's (FHSU's) motion for summary judgment (Doc. 28). For the following reasons, the court grants the motion.

### I. Background

This is a Title VII employment case involving claims of gender discrimination and retaliation. Plaintiff is a white female who has worked for the state of Kansas as a custodial specialist at FHSU since September 2006. Plaintiff claims that FHSU discriminated against her in March 2008 when it hired a man, Darren Timken, to be the McMindes Hall custodial supervisor instead of her. She further claims that FHSU retaliated against her by: (1) not hiring her as McMindes hall custodial supervisor; (2) giving her a written warning on August 27, 2008; (3) giving her a satisfactory rating on her March 9 and September 20, 2009, performance evaluations; and (4) transferring her from McMindes Hall to Wiest Hall on May 18, 2009.

The facts of this case involve various people associated with FHSU. Tom Kuhn is FHSU's director of human resources. Robert Degenhardt is the custodial manager for residential life at FHSU, and is responsible for overseeing residential life custodial services, including the supervision of three supervisors: (1) Luke Depenbusch, the custodial supervisor at Agnew Hall; (2) Christine Schmidt, the custodial supervisor at Wiest Hall; and (3) Becky Kuhn[1] and Darren Timken, successive custodial supervisors at McMindes Hall.

On August 2, 2007, Plaintiff joined a small group of custodial specialists who told Tom Kuhn that they believed Degenhardt was showing favoritism to Depenbusch. Tom Kuhn informed Degenhardt, without revealing specific names, that some custodial specialist had voiced complaints about him.

Prior to August 2007, Degenhardt was the custodial supervisor at Agnew Hall. When one of the Agnew Hall's custodial specialists retired, Degenhardt requested that the retiree's position be changed from a custodial specialist to a custodial supervisor. Tom Kuhn, FHSU's director of human resources, advertised the position in-house-only. Only two individuals applied for the Agnew Hall custodial supervisor position: Depenbusch, who was hired on August 12, 2007, and a woman. Despite being aware of the position, plaintiff did not apply.

Several months later, on February 13, 2008, Plaintiff and 13 other people, including two current FHSU employees, applied for the McMindes Hall custodial supervisor position at FHSU, which was not advertised in-house-only. FHSU is not required to advertise a custodial supervisor

---

[1] Tom Kuhn and Becky Kuhn are not related.

position in-house-only.² Four applicants (two men and two women) were interviewed for the position, including Plaintiff. Ultimately, Darren Timken was hired for the position on March 24, 2008. Each of the hiring committee members ranked Timken higher than Plaintiff during the interview, and none of the hiring committee members felt that Plaintiff was the best candidate. Additionally, Timken had more supervisory experience, and also demonstrated a willingness to clean the cafeteria located in the hall at night if needed. Indeed, it is undisputed that Timken outperformed Plaintiff during their respective interviews.³

Nevertheless, Plaintiff believes that she should have been hired as McMindes Hall supervisor because, in her opinion, she is just as capable as Depenbusch, who was previously hired to be Agnew Hall supervisor. Plaintiff also asserts, without specific facts or reasons, that she believes Timken was hired because, in her opinion, Degenhardt wanted to hire a man. Nonetheless, Plaintiff testified at her deposition that she did not feel the interview environment was hostile to her as a woman.

After Timken's hiring, Plaintiff complained to various FHSU employees, including Degenhardt and Depenbusch. On April 10, 2008, Plaintiff submitted a claim to the EEOC.

Plaintiff continued to work as a custodial specialist in McMindes hall after Timken was hired. Plaintiff alleges that several instances that occurred while she worked under the supervision on Timken amount to retaliation. First, Plaintiff takes issue with a written warning. On August 27,

---

² It is common to advertise positions out-of-house without first advertising them in-house-only if prior similar positions advertised in-house-only attracted few acceptable applicants or if the university position needs to be filled quickly. As noted above, the prior supervisor position advertised in-house-only garnered only two applications. If a position is posted in-house-only, it must be posted for a minimum of seven days before the position can be opened to external candidates.

³ Plaintiff concedes that Timken outperformed her, but then makes conclusory allegations, based on her own deposition testimony, that the interview board wanted to fill the position with a male.

2008, Timken gave Plaintiff a written warning, explaining that Plaintiff's comments during an exchange regarding his ability to supervise the McMindes Hall specialists were inappropriate, and that he interpreted Plaintiff's comments as a personal attack on his character and professionalism. The written warning is not part of Plaintiff's permanent record and was not sent to the personnel office. Further, a written warning has no effect on the employee's salary, benefits, or privileges.

Second, Plaintiff alleges that her March 9, 2009, and September 30, 2009, work performance reviews constituted retaliation. Supervisors Timken and Schmidt reviewed Plaintiff's work performance in March and September, respectively, and each cited several positive aspects. Timken noted, however, that Plaintiff seemed to have difficulty with the change of supervisor at first, and also noted that Plaintiff needed to work on her communication skills. Schmidt noted in the review that Plaintiff could help build positive relationships with coworkers. Timken and Schmidt each gave Plaintiff an overall rating of satisfactory.[4] Plaintiff separately appealed both of her satisfactory ratings, and the Classified Employee Performance Evaluation Review Appeal Committee ultimately gave Plaintiff an exceptional rating in both instances.

Third, Plaintiff alleges that her transfer from McMindes Hall to Wiest Hall was retaliatory. In late April 2009, Degenhardt informed custodial supervisors and specialists of personnel changes, including Plaintiff's transfer from McMindes Hall to Wiest Hall. All custodial specialists at FHSU have the same position description, and Plaintiff was paid the same, received the same benefits, and did not work longer hours as a result of her transfer. Further, Degenhardt testified that he placed custodial specialists in settings where he believed they would be happier and thus more productive.

---

[4] Schmidt testified that she had never given any employee an exceptional rating.

On August 28, 2009, plaintiff filed a complaint in this court, alleging sex discrimination and retaliation.

## II. Standards

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[5] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[6] A fact is "material" when "it is essential to the proper disposition of the claim."[7] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[8]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[9] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[10]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[11] The opposing party must "set forth specific facts that would be admissible in evidence in the event of

---

[5] Fed. R. Civ. P. 56(a).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[7] *Id.*

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[9] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[10] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

trial from which a rational trier of fact could find for the nonmovant."[12]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[13] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[14] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[15]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16]

### III.  Analysis

A.  Count 1 - Title VII Gender Discrimination

Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[17] Plaintiff alleges that FHSU did not hire her as the McMindes Hall custodial supervisor because she is female.  Because she can present no direct evidence and instead relies on circumstantial evidence, her claim is subject to the familiar *McDonnel Douglas* burden-shifting

---

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *Adler*, 144 F.3d at 671.

[14] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[15] *Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[16] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[17] 42 U.S.C. § 2000e-2(a)(1); *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 982 (10th Cir. 2008).

analysis.[18]  Accordingly, Plaintiff bears the initial burden of establishing a prima facie case of gender discrimination.[19]  If Plaintiff establishes a prima facie case, the burden shifts to FHSU to articulate a legitimate, nondiscriminatory reason for not hiring her.  If FHSU meets it burden by offering a legitimate rationale in support of its employment decision, the burden then shifts back to Plaintiff to show that FHSU's stated reason for not hiring her is pretext for discrimination.[20]

To state a prima facie case of an illegal failure to promote under Title VII, a plaintiff must show that (1) there was a promotional opportunity available (2) the plaintiff was qualified and had established availability for the position; (3) despite Plaintiff's qualifications, she was not promoted to the position; and (4) the promotional opportunity remained opened or was filled."[21]

FHSU does not dispute that Plaintiff has satisfied the initial burden of stating a prima facie case of gender discrimination regarding her claim of failure to promote under Title VII.  She has demonstrated that a supervisor position was available, that she applied for it, that she was qualified for consideration, and that FHSU filled the position.

Thus, the burden shifts to defendants to articulate some legitimate, non discriminatory reason for not hiring Plaintiff.  Whether Plaintiff was more qualified than Mr. Timken is a decision properly within the purview of hiring officials and not the court, as long as FHSU did not consider gender as a factor.  Indeed, it is well established that Title VII does not entitle

---

[18] *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005) (holding that plaintiffs must rely on McDonnell Douglas framework when presenting only indirect evidence of discrimination).

[19] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[20] *Fischer*, 525 F.3d at 979 (citing *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1134-35 (10th Cir. 2004)).

[21] *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997).

courts "to act as a super personnel department to undo bad employment decisions."[22] Accordingly, "to suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an overwhelming disparity in qualifications."[23]

This court finds that FHSU satisfied its burden of producing nondiscriminatory justifications for its decision not to hire Plaintiff. The above-mentioned facts regarding interview performance, supervisory experience, and qualifications present an adequate ground upon which to infer that the officials made their decision not to hire Plaintiff without regard to gender.

Thus, the burden shifts back to Plaintiff to establish that FHSU's reasons are pretextual, i.e., unworthy of belief.[24] A plaintiff generally shows pretext with evidence such as (1) defendant's proffered reasons are false; (2) defendant acted contrary to a written company policy that prescribed the appropriate action under the circumstances; or (3) defendant acted contrary to an unwritten policy or company practice when making the adverse employment decision.[25] "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."[26]

---

[22] *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citations omitted).

[23] *Id.* (citations omitted); *Jaramillo v. Colordo Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005)

[24] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1177 (10th Cir. 1999).

[25] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[26] *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1998).

Plaintiff has failed to show that FHSU did not in fact rely upon the factors they claim to have considered in arriving at their decision not to hire her. Further, Plaintiff failed to show that FHSU acted in violation of any policy. Other than Plaintiff's sincerely-held personal belief that she has been wronged, nothing suggests that FHSU discriminated against her when it hired Timken, or that she was overwhelmingly more qualified for the supervisor position. Without evidence of pretext, Plaintiff's claim fails on the merits, and thus summary judgment is appropriate.

B.  Count II - Title VII Retaliation

Title VII forbids retaliation against an employee because she opposed any practice made unlawful by Title VII, or because she "participated . . . in an investigation, proceeding, or hearing under this subchapter."[27] To prevail on a title VII retaliation claim, a plaintiff must show that retaliation played a part in a materially adverse employment decision.[28] For the purposes of a retaliation claim, a challenged employment action is adverse if "a reasonable employee would have found [it] materially adverse."[29] Materially adverse means that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[30] The court must focus on the "materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position" so as to "screen out trivial conduct while effectively capturing those acts

---

[27] 42 U.S.C. § 2000e-3(a).

[28] *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008).

[29] *McGowan v. City of Eufala*, 472 F.3d 736, 742 (10th Cir. 2006) (quotation omitted).

[30] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006).

that are likely to dissuade employees from complaining or assisting in complaints about discrimination."[31]

Absent direct evidence of retaliation, retaliation claims are analyzed under the *McDonnell Douglas* framework.[32] To establish a prima facie case of retaliation, Plaintiff must show (1) she engaged in protected activity; (2) defendant took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.[33] If the Plaintiff can establish a prima facie case, the burden shifts to the defendant to produce evidence of a non-discriminatory reason for the conduct. The burden then shifts to the plaintiff to establish pretext. In this case, however, the analysis begins and ends with the first step because Plaintiff fails to establish a prima facie case of retaliation in each instance alleged.

With respect to the first element, Plaintiff asserts that she engaged in five instances of protected opposition to discrimination. Defendants concede that Plaintiff engaged in protected activity when she (1) complained to Tom Kuhn in August 2007 that she believed Degenhardt showed favoritism to Depenbusch; (2) complained about Timken's hiring in March 2008 to various officials; and (3) filed a complaint with the EEOC on April 10, 2008. FHSU argues, however, that Plaintiff did not engage in protected activity when she complained to Timken about her general work conditions on August 25, 2008, or when she responded to and appealed her March 9, 2009 performance evaluation.

1. Protected Activity

---

[31] *Id.*

[32] *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

[33] *Fischer*, 525 F.3d at 979 (citing *Stover*, 382 F.3d at 1071).

Protected activity for the purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII.[34]

### a. August 25, 2009 Complaint

Plaintiff did not engage in protected activity during her August 25, 2008, complaint about working conditions. On August 25, 2008, Timken asked Plaintiff's opinion regarding a student worker's job duties. Plaintiff gave her opinion, but also complained that she believed Timken was not doing his job correctly. In other words, Plaintiff complained about her work conditions but did not complain about discrimination or retaliation. Plaintiff claims this conversation should be considered a protected activity because she voiced her complaints about Timken's supervisory skills after having been rejected for the position. It appears as though Plaintiff believes any complaint she has about Timken's work performance is protected because she once complained that his hiring violated her rights. Plaintiff, however, has not cited any case to support this broad theory of protected activity. Rather, Plaintiff's theory directly conflicts with an earlier ruling by this court that "[c]omplaining to management about working conditions without alleging that the adverse conditions are the result of . . . sex . . . simply is not protected under Title VII.[35] As such, Plaintiff's August 25, 2008, statements do not constitute protected activity under Title VII.

### b. March 9, 2009 Performance Evaluation

---

[34] *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir. 1994).

[35] *Shirley v. Accord*, No. 08-2570, 2009 WL 3210505, at *2 (D. Kan. Oct. 1, 2009) (citing *Tratree v. BP N. Am. Pipelines, Inc.*, 227 Fed. App'x 390, 395 (5th Cir. 2008); *Harper v. Hunter Coll.*, 1998 WL 639397 at *1 (2d Cir. Feb. 5, 1998); *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411-12 (9th Cir. 1987)).

On March 9, 2009, Timken gave Plaintiff a satisfactory performance rating. After reviewing the evaluation, Plaintiff wrote "I am not in agreement with this review. I feel retaliation is taking place and will not sign this. I expected better than satisfactory. I was told not to say a word unless I was spoke to by Darren and now my communication is poor?" FHSU argues that even though Plaintiff made a vague reference to retaliation, she did not assert that the rating was retaliation for her engaging in protected activity under Title VII or that the rating was motivated by any other illegal consideration, including gender. Relying on the premise that "[g]eneral complaints about company management and one's own negative performance evaluation will not suffice," FHSU argues that Plaintiff's appeal of the satisfactory rating does not constitute protected activity.[36] Plaintiff responds with a rather attenuated argument that the appeal is related to Timken's letter of reprimand, which she believes was tied to her grievance process against FHSU.

Although Plaintiff mentioned retaliation on her performance evaluation, she did not specifically link it to engaging in protected activity. The Tenth Circuit has made it clear that vague references to retaliation do not automatically convert a general workplace complaint into a

---

[36] *Hinds v. Spring/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).

protected activity.[37]  Therefore, Plaintiff's complaints about her March 9, 2009 performance evaluation do not constitute protected activity under Title VII.[38]

Plaintiff did, however, engage in protected activity in the three instances conceded by FHSU.  Nevertheless, each retaliation claim based on them fails on the causal connection element and the materially adverse element.

2.  Alleged Instances of Retaliation

   a.  Not Hiring Plaintiff As McMindes Hall Custodial Supervisor

FHSU concedes that Plaintiff can satisfy the first two prongs of her prima facie case in that she engaged in protected opposition to discrimination on August 2, 2007, when she joined a small group of custodial specialists who told Tom Kuhn that they believed Robert Degenhardt was showing favoritism to Depenbusch.  Further, FHSU's failure to offer her the supervisor position in March 2008 was materially adverse.  FHSU argues, however, and this court agrees, that Plaintiff cannot establish a causal connection between her protected activity in August 2007 and its decision not to hire her as a supervisor seven months later.

"A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[39]

---

[37] *Id.*; *Anderson v. Academy School Dist. 20*, 122 Fed. Appx 912, 916 (10th Cir. 2004) (unpublished) (holding that a "vague reference to discrimination and harassment without any indication that [it] was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim"); *Taher v. Wichita State University*, 526 F.Supp.2d 1203, 1221 (D. Kan. 2007) (holding that plaintiff had not engaged in protected activity because although he complained generally of discrimination and harassment, he did not complain that any such actions were motivated by his national origin or any other illegal motive).

[38] Even if the appeal of the March 2009 performance evaluation was a protected activity, summary judgment would still be proper because, as explained below, Plaintiff cannot establish a prima facie case because the employment action taken was not materially adverse.

[39] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citations omitted).

"Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."[40] Indeed, the Tenth Circuit has held that a "three month period, standing alone, is insufficient to establish causation."[41]

Here, there is simply no causal connection linking Plaintiff's complaint in August 2007 to FHSU's decision not to hire her in March 2008. There is no evidence that any of the individuals interviewing Plaintiff knew that Plaintiff had even engaged in protected activity. Further, Plaintiff's claim that Degenhardt avoided females because he did not share breaks with them is not sufficient evidence to establish causation between Plaintiff's complaint and FHSU's decision not to hire her. Because no evidence suggests a causal connection between Plaintiff's protected activity and FHSU's failure to offer her a supervisory position, Plaintiff cannot establish her prima facie case, and summary judgment is proper.[42]

    b. August 27, 2008 Written Warning

Supervisor Timken issued Plaintiff a written warning on August 27, 2008, after an encounter a few days earlier when Plaintiff complained to Timken about his job performance, training, and perceived unfairness. The written warning was never made a part of Plaintiff's permanent record and had no effect on her salary, benefits, or privileges.

---

[40] *Id.*

[41] *Id.* (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

[42] Even if Plaintiff could establish a prima facie case, summary judgment would still be proper because, as detailed above in the gender discrimination analysis, FHSU can offer legitimate, non-discriminatory reasons for not hiring Plaintiff and Plaintiff cannot establish pretext.

This written warning is simply not a materially adverse employment action. The Tenth Circuit has held that "[a] written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status."[43] Timken's warning was, at best, trivial, and did not affect Plaintiff's employment in any material way. As such, Plaintiff cannot establish a prima facie case, and summary judgment is appropriate.[44]

c. Performance Evaluations

Plaintiff contends that her satisfactory ratings on her March 9 and September 20, 2009, evaluations constitute retaliation. Supervisors Timken and Schmidt each separately gave Plaintiff a satisfactory rating. The only other options were exceptional and unsatisfactory. Plaintiff appealed both decisions, and each time was successful in ultimately obtaining an exceptional rating. Plaintiff admitted that many people would not consider "satisfactory" to be a bad rating, and further noted that although appealing required some time commitment, it was a painless process. Additionally, all custodial specialists at FHSU, including Plaintiff, are Kansas classified employees, who enjoy job protection as long as each maintains a satisfactory or higher rating. Moreover, a classified employee's salary and benefits are dictated by the Kansas civil service pay plan, and thus FHSU has no authority to deviate from this pay plan or to award any merit-based incentives.

---

[43] *Haynes v. Level 3 Comm'n, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006). Despite the Supreme Court's subsequent decision in *Burlington Northern*, *Haynes* is still good law. *See Ram v. New Mexico Dep't of Environment*, 2007 WL 5239192, at *35-36 (D. N.M. July 6, 2007) (noting that the Supreme Court denied cert in *Haynes* and the Tenth Circuit declined to modify its holding in *Haynes* when it had the opportunity to do so in *EEOC v. PVNF*, 487 F.3d 790 (10th Cir. 2007)).

[44] Even if the August 27, 2008, warning was a materially adverse action, Plaintiff's claim would still fail because she cannot establish a causal connection. Plaintiff's most recent protected activity occurred on April 10, 2008, when she filed a claim with the EEOC. Plaintiff has simply not established that the written reprimand four months later was in any way connected to the filing of the EEOC claim. As noted *supra*, the Tenth Circuit in *O'Neal* has specifically noted that a "three-month period, standing a lone, is insufficient to establish causation." 237 F.3d at 1253.

It is well settled that minor or trivial employment actions do not rise to the level of 'adverse actions' and that "not everything that makes an employee unhappy is [] actionable."[45] Indeed, the Tenth Circuit has specifically held that receiving negative marks on a performance review, unaccompanied by other adverse employment action, is not sufficient to establish a prima facie case of retaliation.[46] Plaintiff's evaluations in both March and September 2009 were overwhelmingly positive, and Plaintiff was in no way penalized by her satisfactory rating. Further, Plaintiff's rating was changed from satisfactory to exceptional in what Plaintiff herself described as a painless process. Accordingly, Plaintiff's satisfactory performance evaluations in March and September 2009 do not constitute materially adverse action and thus summary judgment is appropriate on those claims.[47]

d. Transfer to Wiest Hall

On April 27, 2009, custodial manager Degenhardt called a meeting of the residential life custodial department to inform them of personnel changes effective May 18, 2009. Degenhardt believed the specialists were not as productive as they could be, and attributed this lack of productivity to friction and tension between and among supervisors and some of the specialists. Degenhardt placed the specialists in settings where he believed they would be happier, and, as a result, more productive. Plaintiff was transferred from McMindes Hall to Wiest Hall, but was not the only specialist transferred.

---

[45] *Haynes*, 456 F.3d at 1222.

[46] *Fox v. Nicholson*, 304 Fed. Appx. 728, 733 (10th Cir. 2008) (unpublished).

[47]Even if the satisfactory performances reviews were adverse actions, summary judgment would still be appropriate because Plaintiff cannot establish a causal connection. Plaintiff's most recent protected activity occurred on April 10, 2008, when she filed a complaint with the EEOC. The earliest evaluation took place 11 months later. As discussed above, the Tenth Circuit has repeatedly held that even a three-month period, standing alone, is insufficient to establish causation.

Whether a transfer constitutes a materially adverse action sufficient to sustain a Title VII retaliation claim is determined on a case-by-case basis and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."[48] "[R]eassignment of job duties is not automatically actionable." In evaluating lateral transfers, the Tenth Circuit has held that "[w]ithout significant adverse changes to working conditions, a lateral transfer is not an adverse employment action."[49]

Here, Plaintiff did not endure adverse changes to her working conditions. McMindes and Wiest Hall are both residential halls where FHSU students live, and are essentially in the same physical condition. Custodial specialists in each hall have the same position description. McMindes Hall is significantly larger and also has a kitchen and cafeteria. Wiest hall is smaller, but specialists there are also responsible for cleaning the Wooster laundromat. Custodial specialists at each hall would perform the same type of work. Indeed, aside from the difference of a kitchen or laundromat, the two jobs are the same. Plaintiff did not work longer hours as a result of her transfer and was not paid any differently. And, although Plaintiff's duties at Wiest Hall were not identical to her duties at McMindes Hall, she admitted that the work at Wiest was not significantly harder than the work at McMindes. Accordingly, there was no adverse action and thus Plaintiff cannot establish her prima facie case.[50]

---

[48] *Burlington Northern*, 548 U.S. at 71 (citations omitted).

[49] *Lara v. Unified Sch. Dist. #501*, 350 Fed. Appx. 280, 284 (10th Cir. 2009) (unpublished) (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)).

[50] As with the other allegations of retaliation, even if Plaintiff could establish that it was an adverse action, she still could not meet her burden of proving a prima facie case because she cannot show a causal connection between her protected activity and her transfer. Her most recent protected activity was April 10, 2008, when she filed an EEOC complaint. Her transfer was more than a year later, on May 18, 2009. Thus, Plaintiff cannot show a causal connection based on temporal proximity and has offered no other evidence to support her claim. As such, summary judgment is proper.

In sum, each of Plaintiff's alleged instances of retaliation must fail because Plaintiff cannot meet her burden of establishing a prima facie case. As such, summary judgment is proper.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgement (Doc. 28) is hereby GRANTED.

**IT IS SO ORDERED**.

Dated this 28th day of April, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE